UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| **RESOURCE TECHNOLOGY CORP.**, | ) | |
| | ) | |
| Debtor. | ) | |
| Illinois Investment Trust No. 92-7163, | ) | |
| | ) | Case Number 08-cv-2425 |
| Appellant, | ) | |
| v. | ) | Honorable Matthew Kennelly, |
| | ) | District Judge |
| The City of Peoria and the County of Peoria | ) | |
| | ) | Appeal from U.S. Bankruptcy Ct., |
| | ) | Judge Eugene R. Wedoff, |
| Appellee. | ) | Case No. 99 B 35434 |

## APPELLEE BRIEF OF THE CITY OF PEORIA AND THE COUNTY OF PEORIA

Linda M. Kujaca
P.O. Box 254
Wood Dale, IL 60191
630/408-4418

## TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Jurisdictional Statement ................................................................ iv

Summary of Argument ................................................................ v

Argument ................................................................ 1

Conclusion ................................................................ 14

Certificate of Compliance with F.R.A.P. 32(a)(7) .................... 15

## TABLE OF AUTHORITIES

**Cases**

*Bucktown Partners v. Johnson*,
    119 Ill.App.3d 346, 456 N.E.2d 703 (1983) ................................   8, 9

*In re The Casual Male Corporation*,
    120 B.R. 256 (Bankr.D.Mass.1990) ..........................................   6, 7

*In re Texas Health Enterprises, Inc.*,
    246 B.R. 832, 834 (Bankr.E.D.Texas 2000) .............................   3, 8

**Statutes and Rules**

11 U.S.C. §101                          ................................................................   1(fn)

11 U.S.C. §365                          ................................................................   v, 1, 2, 3, 8(fn), 12, 14

Federal Rule of Civil Procedure 59     ........................................   11

## **JURISDICTIONAL STATEMENT**

The City of Peoria and the County of Peoria (hereinafter referred to as "Peoria") for its Jurisdictional Statement, states as follows:

The Statement of the Basis of Appellate Jurisdiction in the Appellant's brief is complete and correct for purposes of this appeal.

## **SUMMARY OF ARGUMENT**

The issues raised by the Appellant all contend with rulings made by Bankruptcy Judge Eugene Wedoff during and shortly after a two-day trial regarding whether contracts could be assumed and assigned pursuant to section 365 of the Bankruptcy Code. Judge Wedoff correctly determined that the Appellant failed to show adequate assurance of future performance, as required by the statute, and that assumption and assignment should accordingly be denied. In reaching his determination, Judge Wedoff found, among other findings, that the Appellant failed to provide sufficient financial information and did not provide the counter-parties with sufficient recovery options in the event of breach.

Peoria, Appellee herein, believes that the Bankruptcy Court was correct in its evidentiary and factual determinations at trial. Peoria further believes that Judge Wedoff did not abuse his discretion nor were his rulings clearly erroneous. The Appellee does not contest the Appellant's Statement of Facts as it relates to issues of fact and not legal interpretations thereof. Further, Peoria joins in and adopts the arguments made by its co-Appellee, Allied Waste Industries, Inc. ("Allied") in its Appellee Brief.

# **ARGUMENT**[1]

On or about November 30, 1995, Resource Technology Corporation ("RTC") entered into an agreement with Peoria (the "Landfill Agreement") which gave RTC the exclusive right to develop and to install a landfill gas-to-energy conversion project at a landfill owned by Peoria (the "Peoria Landfill"). RTC was placed into bankruptcy in 1999. Years later, in July of 2006[2], RTC's chapter 7 bankruptcy trustee Jay Steinberg (the "Trustee") filed a motion pursuant to section 365 of the Bankruptcy Code[3] to assume and assign several contracts, including the Landfill Agreement, to Scattered Corporation ("Scattered"), Chiplease, Inc. ("Chiplease"), or their designee, Appellant Illinois Investment Trust No. 92-7163 ("Appellant" or the "Trust") (Scattered, Chiplease and the Trust shall be referred to collectively herein as the "Greenblatt Entities"). Peoria objected to the Trustee's motion.

In February 2008, after over a year of discovery and delays, and after multiple hearings and a two-day trial, the bankruptcy Trustee's motion to assume and assign the Peoria Landfill Agreement[4] to the Trust was denied. In reaching its ruling denying the assumption and assignment motion, the Bankruptcy Court found that the Trustee had failed to meet his burden under sections 365(b)(1)(A) and (C) to adequately assure Peoria that the putative assignee – the Trust – was capable of curing defaults or of performing in the future under the Peoria Landfill Agreement. Further, at a subsequent hearing on the

---

[1] All citations herein will follow the format of the Appellant's brief. The Trust's trial exhibits will be cited as "Trust Trial Exhibit ___" and Peoria's trial exhibits will be cited as "Peoria Trial Exhibit ___", with any necessary page references.

[2] The history of the RTC bankruptcy, combined with other litigation with related parties, is quite extensive. Appellant has already described many of the details relevant to this appeal. Peoria only seeks to reiterate dates and actions necessary to the issues in its response.

[3] 11 U.S.C. §101, et. seq.

[4] As well as the Bloomington and Springfield landfill agreements.

Trustee's motion to reconsider the order denying the assumption and assignment motion, the Bankruptcy Court agreed with the position of Peoria that, since the Trustee had failed to preserve his statutory period under section 365(d)(1) of the Bankruptcy Code to assume and assign the Peoria Landfill Agreement, the relief sought by the Trustee to renew the assumption and assignment motion by presenting new evidence to show adequate assurance of future performance by another related, but wholly new and previously undisclosed entity, was, among other things, statutorily barred.

Peoria asserts that the Bankruptcy Court's holdings regarding the Trust's inability to provide adequate assurance of future performance pursuant to 11 U.S.C. §365 are a correct application of the statute and relevant case law and that such holdings do not constitute an abuse of discretion.  The Appellant argues for the reversal of the Bankruptcy Court's decision based upon several arguments, including:

1. The Bankruptcy Court misapplied the term 'adequate assurance of future performance';

2. The Bankruptcy Court erred in its presumed discounting of the testimony of the Appellant's witnesses; and

3. The Bankruptcy Court erred in not allowing the Appellant (or Appellant's new business entity) a new trial[5].

**I.   The Appellant failed to show adequate assurance of future performance**

In arguing that the Court misapplied the term 'adequate assurance of future performance', the Trust appears to argue that the Court not only required more in the way of adequate assurance than Peoria had when it executed the original Landfill Agreement,

---

[5] A fourth point of contention, that Allied, Sangamon and American Disposal do not have standing to challenge the motions filed against them, appears to relate to these entities only and not to Peoria.

2

but also discounted the testimony of the Trust's witnesses regarding their experience, the Trust's funding and the potential remedies of the contracting parties in the event of breach.

Under section 365(b)(1) of the Bankruptcy Code, the Trustee was required to provide adequate assurance of future performance under the Landfill Agreement in order that he could assume and assign it. Adequate assurance is given a practical, pragmatic construction based upon the circumstances of the case. *In re Texas Health Enterprises, Inc.*, 246 B.R. 832, 834 (Bankr.E.D.Texas 2000) (internal citations omitted). Assurance of future performance is adequate if performance is likely (i.e., more probable than not). *Id* at 835. The burden to prove adequate assurance was upon the Trustee.[6] *Id.*

At trial, Peoria and Allied argued that the Trust was an unproven entity which had never operated a gas-to-energy collection system or a landfill (Tr. Part 1 at 19[7]), was run by the same individuals who were responsible for RTC's substandard operations (Tr. Part 2 at 228-231), failed to provide any financial indicia, such as balance sheets or bank account statements, to support its position (Tr. Part 2 at 243), and based its funding estimates on a series of contingencies, none of which were guaranteed (Tr. Part 1 at 22). Peoria also argued that the Trust's financial recovery projections were highly inflated (Tr. Part 1 at 23) and that the Trust did not possess, nor would it likely possess in the near future, a valid permit for operation from the Illinois Environmental Protection Agency (Tr. Part at 23-24; Tr. Part 2 at 155, 176, 244). Further, Judge Wedoff questioned the nature of the Trust (Tr. Part 2 at 260) and whether Peoria and Allied would have any

---

[6]   The Trustee did not present evidence at trial and relied on the evidence provided by the Trust.

[7]   The citations to the issues noted in this paragraph are representative and not intended to be exhaustive. These issues were discussed throughout two days of trial and citing every instance of discussion in the transcripts would be extensive and, ultimately, of little use to this Court.

3

recourse should Scattered or Chiplease fail to fund the Trust as promised (Tr. Part 2 at 195-196, 256, 258). Thus, at a minimum, these were issues that needed to be successfully addressed by the Trust to show an adequate assurance of future performance.

At no point did Peoria seek any assurances of performance which exceeded those provided in the original Landfill Agreement. The original Landfill Agreement[8] required, among other responsibilities, that RTC pay royalties (Trust Trial Exhibit 43; Peoria Trial Exhibit 1 at 2), operate the Project at RTC's own expense (Trust Trial Exhibit 43; Peoria Trial Exhibit 1 at 5-6) and operate the Project in such a manner in accordance with the regulations prescribed by the Illinois Environmental Protection Agency (Trust Trial Exhibit 43; Peoria Trial Exhibit 1 at 6-7). At trial, the Trust failed to show its ability to comply with these basic tenets of the Landfill Agreement. The Trust also failed to address other pertinent issues raised by the parties in opposition to the Trustee's motion. In fact, the Trust was unable to show at a minimum the *basic* financial wherewithal sufficient to maintain operations, that it held a valid IEPA permit or that its structure was sufficient to ensure that Peoria and Allied would be protected in event of breach. None of these showings were without the scope of the original Landfill Agreement. Judge Wedoff stated:

> Any time there is a need to provide adequate assurance of future performance, the first thing that's done is to show the financial ability of the proposed counter-party to provide the services that are necessary to provide the assurance that the financial ability will continue into the future.
>
> So what does one typically do? One looks at the operating history of the entity, one looks at its balance sheet, one looks for any guarantee of

---

[8] The Landfill Agreement, notably, was executed with RTC, which was at the time of execution an established and presumably financially stable corporation. The Trust, on the other hand, had never conducted business.

4

performance that can be offered, and those things provide some kind of adequate assurance that performance is going to be able to be provided.

What do we have here? We have an entity that's never done business before, that has provided no balance sheet, no income statement, that acknowledges a need to have substantial funds available in the near future.

And the only evidence that it has that those funds will be available is a contract negotiated with the same people on both sides of the contract, and with, as I've just outlined, no ability of the entity who is going to be providing the services to sue for completion of the agreement that's going to provide the financing.

The only assurance that we have that this will be done is the statement by Messrs. Jahelka and Greenblatt that they intend to do it. There is nothing legally enforceable that would require that to be done.

Tr. Part 2 at 253, 254.

Further, the Judge acknowledged:

The $3 million loan is absolutely essential, based on all the testimony I have heard, for the performance of these contracts, but there is no effective legal enforcement that the trust would have to obtain payment of that – of those loan proceeds. I will also add that I don't believe there is sufficient evidence to show the ability of the proposed lenders to make those loan payments.

I would have expected in order to be persuaded of that to see balance sheets, income statements and other evidence beyond the oral testimony of the principals of those entities, but that's not the principal problem.

The principal problem is that those entities, their principals, Mr. Jahelka and Mr. Greenblatt, could determine at any point that they chose not to fund the loan, and Mr. Connolly would have no effective means of enforcing the obligation. And the counter-parties would have even less of an opportunity to enforce the obligation because they are given no rights under any of these agreements.

Tr. Part 2 at 257, 258.

It is clear from Judge Wedoff's comments that he believes that the Trust had failed to show the basic ability to operate under the Landfill Agreement. Further the Judge noted the Trust's abject failure to provide Peoria and Allied with any recourse in the event of

5

breach. Nothing in this recitation by the Judge shows any requirement that the Trust operate above and beyond the provisions of the original Landfill Agreement. While at one point during the trial the Judge may have expressed a certain 'hope' that the Trust was in better financial shape than RTC (Tr. Part 2 at 193; Appellant Brief at 10), his expression was not dispositive to the issues in the case and did not impact upon the final conclusion that the Trust was unable to show that it could perform the Landfill Agreement in the future. Had the Judge ruled on this specific issue, he might have very well and rationally found that the Trust was financially worse off than RTC was at the time the Landfill Agreement was executed, but he did not have any financial documents or other relevant evidence to make such a determination.

      The Trust also argues that the fact that it had set up contracts with various service providers (including many who had worked previously with RTC and were currently working with Harry Henderson, the state court appointed receiver operating at many landfills previously run by RTC) was indicative of its ability to perform under the landfill agreements. However, the fact that the Trust had contracts in place with proposed providers was based upon the presumption that the landfill contracts would be assumed by the Trust. That service providers were willing to work with the Trust once it began operating at the landfills is not indicative of the Trust's financial ability as a whole or its ability to comply under the landfill agreements.

      The Trust argues that the testimony of its personnel shows adequate assurance of future performance. In its argument that if the Trust cannot show adequate assurance as a recently incorporated entity, the Court should rely on the experience and qualifications of John Connolly and its other operational staff, the Trust cites the case of *In re The Casual*

*Male Corporation*, 120 B.R. 256 (Bankr.D.Mass.1990). In the *Casual Male* case, the proposed assignee had recently incorporated. *Id* at 264. The other party to the contract argued that the assignee had no operational history upon which to judge adequate assurance of future performance. *Id.* As noted by the Trust, the court in the *Casual Male* case held that the assignee's owner and chief executive officer had extensive experience in the industry and that the assignee was financially stronger than the debtor had been. *Id* at 265. What the Trust failed to note in relating this case to the instant matter is that the court in the *Casual Male* case also relied upon the financial statements of the proposed assignee to make its determination. *Id.* The court in the *Casual Male* case compared the balance sheets of the debtor and the assignee and used an assessment of the proposed assignee's liabilities and assets to determine its financial wherewithal. *Id.* In the Trust's case, however, no financial information was provided at trial. Judge Wedoff was only provided with the testimony of witnesses regarding the Trust's financial ability – testimony that Judge Wedoff ultimately found insufficient to persuade him. Thus, the Trust's reliance on the *Casual Male* case for the proposition that John Connolly's testimony should have been sufficient to show adequate assurance of future performance is inapposite.

The Trust further argues that there was no evidence provided at trial that Scattered or Chiplease would be likely to breach their obligations under the loan documents. In this argument, the Trust fails to acknowledge that it was the <u>Trust's burden</u> to show that Scattered and Chiplease would be likely to uphold their obligations under the loan documents. The burden was not upon Peoria to show that Scattered, Chiplease and the Trust would breach the Landfill Agreement. Instead, the burden was upon Scattered,

7

Chiplease and the Trust to show adequate assurance of future performance. *Texas Health Enterprises*, *supra* at 835. As a result of their failure to do so, Judge Wedoff denied the Trustee's motion to assume and assign the Landfill Agreement.

Similar to the Trust's argument that Peoria provided no evidence that Scattered or Chiplease were likely to breach their obligations under the loan documents, the Trust also argues that there was no evidence at trial that Scattered or Chiplease are thinly capitalized. Once again, Peoria was not held to the standard of having to proving a negative. It was the burden of the movant(s) to show that they were sufficiently capitalized. In providing no documentation to support the assertion of being adequately capitalized, the Trust failed to uphold its burden of proof. As stated by Judge Wedoff,

> [Peoria and Allied] are relying on an unsecured promise by two corporations that are not publicly held[9], have no documentation that's been produced here as to what their financial circumstances are. We have only the testimony of two individuals as to what their net worth and ability to make payments are.

Tr. Part 2 at 190.

II. **Judge Wedoff's conduct regarding the testimony of the Appellant's witnesses was not clearly erroneous**

The Appellant argues that Judge Wedoff's denial of the assumption and assignment motion should be overturned as the Appellant claims the testimony of its witnesses was unrebutted. The Appellant cites the case of *Bucktown Partners v. Johnson*, 119 Ill.App.3d 346, 456 N.E.2d 703 (1983) for the proposition that a finder of fact may not simply reject unrebutted testimony. While *Bucktown Partners* states generally that in

---

[9] The Trust, in a footnote, states that it is not aware of any requirement in the Section 365(f) case law requiring an assignee to obtain a guaranty from a publicly held company. Appellant Brief at 16(fn). As this Court can plainly see, Judge Wedoff noted that the companies were privately held to highlight their lack of transparency and the lack of public information regarding their finances, not to hold that the assignee was required to obtain a guaranty from a publicly held company.

many jurisdictions "the positive uncontradicted testimony of a witness is either conclusive upon the trier of fact or may not be disregarded by the fact finder unless certain exceptions are satisfied", the court in *Bucktown Partners* states at length numerous exceptions to this rule. *Id* at 349-350. Exceptions cited in *Bucktown Partners* include improbably testimony, testimony which is unworthy of belief, suspicious, evasive, impossible or if the truth or accuracy of the testimony is subject to a reasonable doubt. *Id.* The Appellant states that the Bankruptcy Court committed reversible error because it did not provide any rationale or make any findings that the testimony of the Appellant's witnesses was beyond belief or was inherently improbable. It is clear from Judge Wedoff's comments throughout and following the two-day trial, however, that his rulings were not based solely upon the testimony of one or two witnesses. It is quite clear that Judge Wedoff viewed the evidence as a whole, not in the piecemeal and haphazard fashion the Appellant suggests. Perhaps Judge Wedoff's clearest and most instructive description of his trial ruling was presented at the March 5, 2008 hearing, (further discussed below):

> At the trial then there were three issues to be determined: One, whether the $3 million was available to [the Trust] and would actually be received by [the Trust]; two, whether $3 million would be sufficient and what contingencies were in place for securing additional funding; and, three, whether [the Trust's] personnel would be able to obtain the necessary permits and otherwise operate the sites in compliance with all applicable regulations.
>
> Because the court found that the first issue had to be determined against the trustee's motion, the court found that there was no reason to find the other issues, determine the other issues.
>
> The basis for that determination, that the funding had not been shown to be sufficiently available, was multitudinous. First, [the Trust] offered no financial records whatever. Its sole source of funding for the operations of the landfill gas facilities was proposed to be a revolving line of credit from

9

> Scattered Corporation and Chiplease. Therefore, this loan was absolutely essential to [the Trust's] ability to perform under the contracts. Yet, the loan agreement offered into evidence provided no effective remedy against the lenders by either [the Trust] or the counterparties to the operating agreement in the event of a breach by the proposed lenders. Thus, there was no assurance of financial performance to support the contractual performance. That rendered the contracts incapable of being assumed by reason of the lack of adequate assurance of performance by the assignee.
>
> There are actually four separate grounds for coming to that conclusion. First, the loan's promissory note introduced into evidence imposed no obligation on Scattered or Chiplease, the proposed lenders, to make the loan. It only imposed an obligation on [the Trust] to repay the loans that it received. Scattered Corporation offered no financial records of its own, and admitted that it did not currently have the funds on hand to meet loan obligations.
>
> Second, there are fundamental structural impediments to enforcement of the proposed loan agreement. The lenders were the beneficiaries of the trust. The trust assets are revocable, and the beneficiaries could remove the trustee at will.
>
> Third, the loan agreement imposed no affirmative obligation on the part of [the Trust] to use whatever funds were produced pursuant to the loan agreement to operate the facilities in question.
>
> And, fourth, the counterparties had no ability to ensure that the funds actually made available – would be made available to [the Trust] or that the funds would be used to operate the facilities. There was insufficient evidence presented to support a finding that [the Trust] is a business trust under Illinois law[10].
>
> […]
>
> Accordingly, for all of those reasons, the motion to assume and assign the facility operating agreements was denied.
>
> Transcript, March 5, 2008 at 4-6[11].

---

[10] Thus, while the Trust argues that Judge Wedoff erred in determining that the Trust was ineligible for bankruptcy protection, Judge Wedoff actually found that the Trust failed to present sufficient evidence to meet the Trustee's burden regarding whether the Trust was a business trust.

[11] This document is included in the Appellee's Designation of Additional Items to be Included in the Record on IIT Appeal as Tab F.

It is clear from Judge Wedoff's comments that his ultimate ruling was not based upon solely the testimony of John Connolly, Andrew Jahelka or Leon Greenblatt. The Judge succinctly set forth the bases for his rulings, none of which rested upon the direct testimony of any of the Trust's witnesses. Thus, the argument raised by the Appellant, that Judge Wedoff committed reversible error by not accepting the unrebutted testimony as true, is inapposite. It is clear that Judge Wedoff's ruling was based upon a thoughtful analysis of the evidence provided to him and does not constitute an abuse of the Judge's discretion.

### III.   The Appellant sought to create another entity

Shortly after the denial of the motion to assume and assign the Landfill Agreement, Scattered, Chiplease, the Trustee and/or the Trust sought to create another entity to be the assignee of the Landfill Agreement. After Judge Wedoff discussed the type of entity to which he would have been inclined to assign the Landfill Agreement (Tr. Part 2 at 258-261), the Greenblatt Entities sought to create such a new entity – Illinois Generating Station #1 Inc. (hereinafter, "IGS"). The Greenblatt Entities and the Trustee then filed a Motion to Allow for the Presentation of Additional Circumstances, for the Stay of Enforcement of the Court's Order and To Allow for the Assumption and Assignment of Contracts (the "Post-Trial Motion") (Dkt. No. 4182). The purpose of the Post-Trial Motion was, ostensibly, to seek assumption and assignment of the facility operating agreements to IGS, as opposed to the Trust. Peoria filed its Preliminary Objection of the City and County of Peoria to Trustee's Motion for a New Trial on the Trustee's Motion to Assume and Assign Certain Contracts (Dkt. No. 4186), stating, amongst other objections, that: (1) Federal Rule of Civil Procedure 59 did not allow for

11

the Trustee to present such evidence; (2) that the evidence that IGS sought to admit did not exist at the time of the trial; and (3) that the time period for the presentation of such motions granted by 11 U.S.C. §365(d)(1) had expired.

On March 5, 2008, Judge Wedoff read his opinion into the record regarding the Post-Trial Motion. Transcript, March 5, 2008. In this opinion, the Judge discussed whether there was an "invitation" by the Court to the Trust to revise its proposal for showing adequate assurance of future performance. *Id* at 7. The Judge stated that his comments were to give the Greenblatt Entities some idea of what might have been adequate assurance of future performance, not to actually entertain such a motion. *Id.* The Judge noted that the deadline to assume and assign the Landfill Agreement had "long passed" and even if it had not, the decision to reopen the trial to submit additional proof is generally subject to the sound discretion of the court. *Id* at 7-8 (internal citations omitted). Judge Wedoff further stated:

> As I indicated earlier, the evidence presented at trial was plainly insufficient to establish the trustee's obligation, burden of proof. To show adequate assurance of future performance and to allow a new proposal to be presented after the court made the ruling and well after the deadline for making motions to assume or assign had passed would not be appropriate. The court's discretion then being exercised against, the motion will be denied.
>
> *Id* at 11.

Thus, the Judge denied the Post-Trial Motion.

The Appellant provides no authority for its assertions that Judge Wedoff's rulings regarding the Post-Trial Motion were clearly erroneous or an abuse of his discretion. After preparing for trial for over two years with the Trust as the proposed assignee, and losing at trial, the Greenblatt Entities and/or the Trustee sought to create a wholly new proposed assignee shortly after trial. No discovery had ever been conducted regarding

IGS prior to trial and Peoria had never even *heard* of IGS prior to the Post-Trial Motion. To have allowed the Greenblatt Entities to disregard the finality of the trial process, allow the creation of a new entity shortly after the old entity lost its motion, and effectively restart the entire trial process, would have been patently ridiculous, not to mention truly unfair to the objecting parties. One could imagine that if the Greenblatt Entities and the Trust had lost with IGS as its proposed assignee, that they would again create another entity to attempt the assumption and assignment process yet another time. Judge Wedoff was well within his discretion to limit the Greenblatt Entities and the Trustee to only one bite at the proverbial apple. While the Appellant argues that the Judge's ruling is reversible, it has failed to provide any authority in support of such a position. As the Appellant did not provide authority showing that Judge Wedoff's rulings regarding the Post-Trial Motion were clearly erroneous or outside his discretion, Peoria believes that the rulings by Judge Wedoff regarding the Post-Trial Motion should be summarily affirmed.

## **CONCLUSION**

The Appellant failed to meet its burden at trial. It failed to produce sufficient evidence to adequately assure future performance of the contracts sought to be assumed and assigned. While the Appellant would like to transfer the burden of proving an inability to perform to the landfill owners, the Appellant had the burden. Judge Wedoff correctly ruled that the Trust did not show sufficient financial ability, that the contract for funding was negotiated with the same people on both sides of the contract, that there was not sufficient evidence to show that the lenders could loan the necessary funds and that Peoria and Allied had no recourse should the contracts not be upheld. Further, Judge Wedoff committed no errors in not allowing the Trust to provide completely new evidence after the close of trial. The Trust shows no reason why the rulings by Judge Wedoff should be considered clearly erroneous or an abuse of Judge Wedoff's discretion. Accordingly, the rulings of the Bankruptcy Court, finding that the Trustee did not meet his burden to show adequate assurance of future performance under 11 U.S.C. §365, denying the Trustee's motion to assume and assign the Landfill Agreement and denying the Post-Trial Motion to provide new evidence, should be affirmed.

## **CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)**

Linda M. Kujaca, counsel of record for the Appellee, The City of Peoria and The County of Peoria, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 4,926 words.

Dated: August 15, 2008.


/s/ Linda M. Kujaca
Attorney for Appellee The City of Peoria
and The County of Peoria

P.O. Box 254
Wood Dale, IL 60191
630/408-4418