**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE: RESOURCE TECHNOLOGY,    )
CORPORATION,    )
    )    **Case No. 08 C 2425**
          Debtor.    )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

This bankruptcy appeal arises from an order entered in the bankruptcy of

Resource Technology Corporation (RTC) denying the motion of RTC's Chapter 7

trustee and appellant Illinois Investment Trust No. 92-7163 (IIT) to assume and assign

certain leases and a subsequent order denying IIT's motion for a new trial. For the

reasons set forth below, the Court affirms the bankruptcy court's ruling.

**Background**

In 1995 and 1996, RTC entered into contracts with the owners of four landfills

(the Landfill Contracts). Appellees the City of Peoria and the County of Peoria

(collectively Peoria) owned one of those landfills. The three other landfills were owned

by various entities that assigned their rights in those landfills and/or the Landfill

Contracts to appellees Allied Waste Industries Inc., American Disposal Services of

Illinois, Inc. and Sangamon Valley Landfill, Inc. (collectively Allied). The Landfill

Contracts granted RTC the exclusive right to develop and install gas-to-energy

conversion projects at each of the landfills.

RTC has been in bankruptcy since 1999. The bankruptcy court approved a

settlement between RTC and its secured creditors, including Leon Greenblatt, Chiplease, Inc. (Chiplease), and Scattered Corporation (Scattered), under which Scattered and Chiplease, or their designee, would obtain the right to seek to assume and assign the Landfill Contracts. The bankruptcy court set July 7, 2006 as the deadline for motions to assume and assign RTC's executory contracts, including the Landfill Contracts. On that date, RTC's trustee filed such a motion, seeking to assign the Landfill Contracts to IIT.[1]

IIT is a trust established under Illinois law. Greenblatt served as trustee of IIT from its formation until shortly before trial in the bankruptcy court, when he was replaced by John Connolly. This change was made because it was anticipated that Connolly would run the business of IIT after it was assigned the Landfill Contracts. Connolly had extensive experience running gas-to-energy facilities at landfills as an employee of RTC. IIT, however, had never operated any sort of business. The beneficiaries of IIT were Chiplease and Scattered. Chiplease is owned by Greenblatt, and Scattered is owned by Greenblatt and Andrew Jahelka. Greenblatt and Jahelka were formerly the owners of RTC.

After the parties reached agreement on several aspects of the motion to assume and assign, including how to cure existing breaches of the Landfill Contracts, the only remaining disputed issue was whether IIT could provide adequate assurance, as

---

[1]In the proceedings below, most of the key motions that form the basis for the current appeal were filed by RTC's trustee in conjunction with IIT. IIT, however, is the real party in interest to those motions. Those motions were filed at IIT's insistence, and it is IIT, through its counsel, that has pursued this litigation at every stage of the proceedings, from discovery though appeal. The parties and the bankruptcy court both recognized, on numerous occasions, the propriety of this arrangement.

required by section 365 of the Bankruptcy Code, of its future performance of the Landfill Contracts.  The parties engaged in discovery on this issue and the matter was tried in the bankruptcy court on February 12-13, 2008.

Connolly, Greenblatt, and Jahelka all testified on behalf of IIT in an attempt to provide adequate assurance that IIT would perform its obligations under the Landfill Contracts in the future if they were assigned to it.  Connolly, based on pro forma financial statements he had prepared for IIT, testified that IIT would require $3 million of funding to bring the Landfill Contracts current and perform its future contractual obligations.  At the time of trial, IIT had less than $1,000 in cash, no financial statements, and no operating history.  Accordingly, it was proposed that Chiplease and Scattered would loan the necessary $3 million to IIT.  Though Greenblatt and Jahelka testified that Chiplease and Scattered would loan the necessary funds, the documents introduced to support this contention only required IIT to repay funds it borrowed – they did not actually require Chiplease and Scattered to loan any money to IIT in the first place.  Connolly admitted that he had not investigated whether Scattered and Chiplease had the ability to loan IIT $3 million and stated he likely would not sue them in the event that they failed to fund IIT.

Greenblatt and Jahelka also testified regarding Chiplease's and Scattered's respective abilities to loan $3 million to IIT.  Though both testified regarding the assets of the entities, IIT offered no financial statements to corroborate their testimony.  Chiplease's and Scattered's assets included very few liquid assets.

Allied and Peoria presented evidence of past regulatory violations by RTC and under Connolly's management in an effort to demonstrate that IIT was incapable of

3

performing the Landfill Contracts.

On February 13, 2008, the bankruptcy court made an oral ruling denying the motion to assign because it found that IIT had not carried its burden to provide adequate assurance of the future performance of the Landfill Contracts. The bankruptcy court's primary reason was the "multitudinous" evidence indicating that the $3 million of required funding was not "sufficiently available." Mar. 5, 2008 Tr. at 4. This finding was based on a number of considerations: (1) the note for the loan between Chiplease, Scattered, and IIT did not actually require Chiplease and Scattered to loan any money to IIT; (2) Scattered and Chiplease, as the lenders to and beneficiaries of IIT, could remove Connolly as trustee at their leisure; (3) IIT had not shown that Scattered and Chiplease had the ability to provide IIT with $3 million; (4) the loan agreement did not require IIT to use funds loaned to it for performance of the Landfill Contracts; and (5) Peoria and Allied had no meaningful way to enforce the Landfill Contracts because IIT, on the evidence presented, was a common law trust as opposed to a business trust.

In its oral ruling, the bankruptcy court noted actions that, if taken, might provide adequate assurance of future performance. IIT took these observations as an invitation to file its post-trial motion. The bankruptcy court made clear, however, that it would consider a wholly new arrangement for assignment of the Landfill Contracts only if such a request was timely. IIT filed a post-trial motion in which it proposed the formation of a new corporation that would be assigned the Landfill Contracts, as well as other changes to attempt to allay the bankruptcy court's concerns. The bankruptcy court denied the motion, finding that it was untimely.

4

**Discussion**

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a), because denial of a

motion to assume and assign a contract is a final, appealable order. *Chiplease, Inc. v.*

*Steinberg (In re Resource Tech. Corp.)*, 528 F.3d 467, 474 (7th Cir. 2008). The

bankruptcy court entered its order denying the motion to assume and assign the Landfill

Contracts on February 19, 2008. Ten days later, RTC's trustee and IIT filed a post-trial

motion. Though not entirely clear from its title, that motion was ostensibly filed pursuant

to Federal Rules of Civil Procedure 59(a) and 59(e), as incorporated by Federal Rule of

Bankruptcy Procedure 9023. The motion sought to present new evidence to the

bankruptcy court and requested, among other things, modification of the order entered

on February 19, 2008. Thus, though not expressly saying so, the post-trial motion

included a request for a new trial as well as amendment of the bankruptcy court's

judgment, thereby tolling the time for filing a notice of appeal. Fed. R. Bankr. P. 8002.

The order denying IIT's post-trial motion was entered on March 11, 2008, and IIT timely

filed a notice of appeal on March 20, 2008.

In general, the Court reviews the bankruptcy court's findings of fact for clear error

and its conclusions of law, including its interpretation of the Bankruptcy Code, *de novo*.

*In re Heartland Steel*, 389 F.3d 741, 743-44 (7th Cir. 2004). In this context, the Court

acts as an appellate court and applies the same standards of review that are

appropriate in other appellate decisions. *Green v. Mass. Cas. Ins. Co.*, 269 B.R. 782,

787 (N.D. Ill. 2001). The bankruptcy court's decision to deny the motion to amend the

judgment or for a new trial is reviewed for abuse of discretion. *E.g.*, *Kapelanski v.*

*Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

**1.      Standing**

IIT challenges Allied's standing to participate in this litigation.  IIT argues that

Allied lacks standing because it never proved that it became the beneficiary of the

Landfill Contracts.  Thus, IIT argues, Allied should not have been heard by the

bankruptcy court in opposition to the motion to assign the Landfill Contracts.

Documentation reflecting whether Allied acquired an interest in the Landfill Contracts

was not made part of the record in the bankruptcy court.  IIT and RTC's trustee,

however, recognized in several filings with the bankruptcy court that Allied had an

interest in the Landfill Contracts.  Thus, there is a basis in the record to support Allied's

standing as a party to three of the four Landfill Contracts.

As Allied notes in its response brief, it never introduced documents evidencing its

assumption of three of the Landfill Contracts because IIT and RTC's trustee never

actually challenged its standing.[2]  A party cannot waive or forfeit an Article III standing

argument by failing to make it in the trial court.  *See Kochert v. Greater Lafayette Health*

*Serv., Inc.*, 463 F.3d 710, 714 (7th Cir. 2006).  Standing under Article III requires an

injury in fact and redressibility.  *Id.*  Allied contends, and several prior filings reflect, that

it had an interest in the Landfill Contracts that would be impaired were those contracts

assigned to IIT.

IIT's standing argument is more appropriately characterized as challenging

whether Allied is the real party in interest.  In other words, the question is whether

_____

[2]The only time that IIT challenged Allied's standing was a passing, two-sentence
reference to standing made during IIT's opening statement at the start of the trial.

Allied, or someone else affiliated with Allied, is the counter-party on three of the Landfill

Contracts and, accordingly, the appropriate party to challenge their putative

assignment. Unlike standing, a party-in-interest challenge can be forfeited if not raised

in the trial court. *See Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215,

224-25 (7th Cir. 1981).

Regardless, even if Allied lacked standing, there is no question that Peoria had

it. The objections that Peoria raised in response to the motions in the bankruptcy court

were the same as Allied's. Moreover, as detailed in this decision, it was IIT's burden to

demonstrate adequate assurance of future performance of the Landfill Contracts. The

bankruptcy court found that IIT failed to do so based on the evidence IIT itself offered.

**2.      Adequate assurance of future performance**

      **a.      Legal standard**

Under the Bankruptcy Code, a trustee may assign a debtor's executory contract

only if it has properly assumed the contract and provided "adequate assurance of future

performance by the assignee of such contract. . . ." 11 U.S.C. § 365(f)(2). Though

there are not many circuit-level decisions dealing with the issue of adequate assurance,

the authorities cited by the parties indicate that there is no conflict regarding the proper

test. "Adequate assurance of future performance" is intended to have "a practical,

pragmatic construction." *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 754

(Bankr. S.D.N.Y. 1986) (quotation omitted). A movant seeking assignment of a contract

does not need to guarantee that the contract will be performed; rather, it need only

show by a preponderance of the evidence that future performance is likely. *Id.*; *In re*

*Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). The inquiry is fact specific and made on a case-by-case basis. *In re General Oil Distrib., Inc.*, 18 B.R. 654, 658 (Bankr. E.D.N.Y. 1982). Factors that courts have considered include financial data submitted by the debtor or movant, the presence of a guarantee (though it is not required), industry outlooks, the nature and relationship of the parties, past dealings of the parties, and the willingness of the parties to fund payments. *See generally In re Embers 86th Street, Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995); *In re General Oil Distrib., Inc.*, 18 B.R. at 658.

Reviewing the oral rulings by the bankruptcy court, it is apparent that the correct legal standard was applied. IIT contends that the bankruptcy court erred by, in effect, requiring a guarantee of performance, which IIT argues is more than section 365 of the Bankruptcy Code requires. That argument is not supported by the record. Rather, the bankruptcy court's questions and analysis demonstrate that it was not attempting to hold IIT to a higher standard. Rather, the bankruptcy court was not persuaded by IIT's evidence that IIT was likely to perform on the Landfill Contracts in the future. In reaching that conclusion, the bankruptcy court never stated or suggested that absolute assurance was required.

Moreover, one of the bankruptcy court's concerns was that the assignment of the Landfill Contracts, as proposed in the motion, might leave Allied and Peoria without an adequate remedy, or any remedy, in the event that IIT defaulted on its obligations. This reflects that the bankruptcy court was not requiring IIT to guarantee its future performance – it acknowledged that the Landfill Contracts might be breached in the future.

### b.     Evidence of adequate assurance

IIT next claims that the bankruptcy court erred when it determined that IIT had

not satisfied its burden to provide adequate assurance it would perform the Landfill

Contracts in the future.  This argument also fails.  The bankruptcy court found that IIT

had virtually no assets of its own and was wholly dependent on Chiplease and

Scattered for funding.  Chiplease and Scattered, however, were not obligated to loan

any money to IIT – they only expressed an intention to do so.  Even if they had been

obligated to loan $3 million to IIT, Chiplease and Scattered, the beneficiaries of IIT,

could have removed Connolly as trustee if he sued them for failure to provide the funds

– something Connolly said he was unlikely to do.  Moreover, IIT introduced scant

evidence to show that Chiplease and Scattered actually had the ability to make the

required loans to IIT, as most of their assets were illiquid, and it introduced no

documentary evidence concerning those assets.  On these facts, the bankruptcy court's

determination that IIT had failed to provide adequate assurance of its future

performance of the Landfill Contracts was not clearly erroneous.

IIT cites a number of cases in which courts determined that adequate assurance

of future performance had been provided.  Those cases, however, are distinguishable.

*See In re Prime Motor Inns, Inc.*, 166 B.R. at 996-97 (finding adequate assurance

based on substantial capital investments); *In re The Casual Male Corp.*, 120 B.R. 256,

264-65 (Bankr. D. Mass. 1990) (finding adequate assurance based on six-month rent

deposit, irrevocable letter of credit, financial statement showing considerable liquid

assets, and extensive business experience of assignee's CEO); *In re Westview 74th*

*Street Drug Corp.*, 59 B.R. at 755 (finding adequate assurance based on two-month

security deposit that would allow landlord to cover its losses); *In re Alipat, Inc.*, 36 B.R.

274, 277-78 (Bankr. E.D. Mo. 1984) (finding adequate assurance where irrevocable

letter of credit was issued in favor of contractual counter-party and contract was

guaranteed by third parties whose financial condition had not deteriorated); *In re*

*Sapolin Paints, Inc.*, 5 B.R. 412, 416-17, 420 (Bankr. E.D.N.Y. 1980) (finding adequate

assurance where economic conditions definitively demonstrated that assignee would

perform on contract and assignee submitted statements showing positive net worth and

income). In each of these cases, considerably stronger evidence concerning the

adequacy of future performance was offered in support of a motion to assume and/or

assign executory contracts.

Several additional cases that IIT cites involve facts somewhat closer to those in

the current appeal. In one case, the court found adequate assurance of future

performance, even though the party assuming the contracts was financed by a loan that

was payable "on demand." *In re Natco Indus., Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y.

1985). The debtor in that case, however, had a long history of performing on the

contracts in question, and past defaults had been minor. *Id.* at 439-41. Another court

found adequate assurance based on testimony reflecting an investor's resources and

willingness to fund a putative assignee. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr.

S.D.N.Y. 1986). Though these cases contain some facts closer to those in the current

case than others on which IIT relies, this does not mean that the bankruptcy court's

ruling was clearly erroneous. Rather, the bankruptcy court considered all of the

evidence presented, noted the gaps in that evidence, and, based on all the

circumstances, made a ruling that was well supported.[3]  As IIT's own authorities make

clear, adequacy of future performance is a factually intensive inquiry that must be made

on a case-by-case basis.

Courts have denied motions to assume and assign contracts based on facts

similar to the current case.  *See, e.g.*, *In re Wash. Capital & Aviation Leasing*, 156 B.R.

167, 175 (Bankr. E.D. Va. 1993); *In re Embers 86th Street, Inc.*, 184 B.R. at 901-02.  As

detailed above, the bankruptcy court explained why, based on all of the evidence

presented, IIT had not provided adequate assurance that it could perform the Landfill

Contracts in the future.  That conclusion is not clearly erroneous and is affirmed.

### 3.    Motion to amend judgment or for new trial

There are two ways to construe IIT's post-trial motion.  First, it can be seen as

proposing an entirely new transaction with respect to the Landfill Contracts, as it sought

to assign those contracts to an entity other than IIT.  Considered that way, the

bankruptcy court did not err in denying IIT's request because, as it found, the time to

propose such a transaction had expired in 2006.  Nor did the bankruptcy court authorize

IIT's request to propose a new transaction; rather, the bankruptcy court stated only that

it would consider such a transaction if timely requested.  RTC's trustee and IIT moved

---

[3]IIT argues that the bankruptcy court erred by not accepting the "unrebutted"
testimony of its witnesses as true.  This argument is without merit.  First, the veracity of
IIT's witnesses' testimony and assumptions was tested on cross-examination.  More
importantly, the bankruptcy court did not reject the testimony of IIT's witnesses; rather,
the bankruptcy court found that the evidence presented by IIT was insufficient to meet
its burden on the issue of adequate assurance of future performance of the Landfill
Contracts.  As stated above, it was IIT's burden to provide adequate assurance of
future performance – not Peoria and Allied's burden to rebut IIT's evidence.

the bankruptcy court for assignment of the Landfill Contracts to IIT in July 2006.  The

parties engaged in over a year of discovery, during which IIT had ample time to marshal

the assets and expertise needed to assure the court that it could perform the

obligations of those contracts in the future.

IIT's post-trial motion can also be viewed as a Rule 59(e) motion to amend

judgment.  "Altering or amending a judgment under Rule 59(e) is permissible when

there is newly discovered evidence or there has been a manifest error of law or fact."

*Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006).  IIT argues that its

post-trial motion offered additional evidence concerning a new corporate entity that

would be assigned the Landfill Contracts and would perform them, as well as alterations

to the manner of funding from Chiplease and Scattered.  Under Rule 59(e), the newly

discovered evidence must exist "at the time of trial."  *Peacock v. Bd. of Sch. Comm'rs of

Indianapolis*, 721 F.2d 210, 214 (7th Cir. 1983).  The same is true for motions under

Rule 60(b).  *Id.*  The evidence IIT offered in its post-trial motion did not exist at the time

of trial; rather, it was created after and in reaction to the trial.

### Conclusion

For the foregoing reasons, the Clerk is directed to enter judgment affirming the

decision of the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 7, 2008